# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MMI PRODUCTS, INC. *
*
Plaintiff *
*
v. * Civil No. PJM 03-2711
*
HENRY F. LONG, JR., et al. *
*
Defendants *

## O P I N I O N

The Court considers Plaintiff MMI Products, Inc.'s Objection to Magistrate Judge Connelly's Order of April 1, 2005 and Defendant Dale Long's Opposition to same.[1] The Magistrate Judge proposes to sanction MMI pursuant to Fed. R. Civ. P. 26(g)(3), by ordering MMI and its counsel to pay the fees of Long's expert because MMI and counsel failed to make reasonable inquiries into the reliability of their own expert's report as incorporated by reference into in MMI's answers to interrogatories.

The Court SUSTAINS MMI's objection.

---

[1] The Opposition has been filed on behalf of all Defendants with the exception of Richard Stellabuto and J.L. Ornamental Fencing, Inc., but the Defendant principally concerned with the issue under consideration is Dale Long and he is the "Long" that this Opinion refers to.

**I.**

The salient facts found by the Magistrate Judge are these:

In its Second Amended Complaint, MMI alleges, *inter alia*, that on or about March 25, 2003 when he left MMI's employ, Long misappropriated a laptop computer that had been assigned to him while employed by MMI. When MMI demanded the return of the laptop and Long complied, MMI employed a computer expert, Jason Velasco of Renew Data Corporation, "to preserve the contents [of the hard drive] in a forensically sound manner, recover deleted electronic files, and provide an analysis of the contents of the [hard drive]." In his investigation, Velasco discovered e-mail fragments which he suggested were indicative of deleted and/or overwritten files. He also found that the computer's internal time clock was off by some 18 months. From this, he concluded that "there was an attempt to overwrite data through a selective restoration from previous backup session or a reinstallation of Microsoft Windows 2000" and that the selective restoration was performed at a backup session that possibly took place on December 10, 2002.

On August 12, 2004, MMI submitted Velasco's report, as well as the requisite Rule 26(a)(2) initial expert disclosures, to Long.

In September 2004, Long retained his own forensic computer expert, Peter Wolf of Kroll Ontrack, Inc., to evaluate the Velasco Report. On September 24, 2004, Wolf received a mirror image of the laptop.[2] On October 26, Long also sent MMI a document request

[2] In October, Dale Long also requested that the actual laptop be delivered to Wolf, but it was not delivered until December 29. There is no indication that the delay in delivery of the laptop affected

seeking all documents relating to the laptop and on November 2, he sent interrogatories seeking, *inter alia*, information as to the chain of custody of the laptop dating from the time Long returned it to MMI to the present.

MMI formally objected to the document production and thus did not immediately produce responsive documents, but on January 10, 2005 it did provide answers to the interrogatories, incorporating the Velasco report by reference.[3] Since the answers still did not contain information relative to the chain of custody of the laptop, on January 18, 2005, MMI submitted – albeit in unverified form – supplemental answers to the interrogatories indicating that, from July 2003 to June 16, 2004, MMI's counsel (Klett Rooney) possessed the laptop and that no one from his office ever turned it on.

Wolf, Long's expert, submitted his expert report to MMI on January 24, 2005. In it, Wolf agreed that the laptop's internal time clock was out of sync, which he attributed to a loss of battery power after Long returned the laptop to MMI. But Wolf challenged Velasco's suggestion of possible restoration activity, having discovered on his own on a Dell computer

---

any of the issues before the Court at this time.

3

Long put the following two Interrogatories to MMI:

"Please describe the chain of custody from on or about June 19, 2003 to the present for the laptop computer that was used by Dale Long while employed at MMI. . ." and "For each person identified in [the previous interrogatory], please describe each and every occasion that the laptop computer was turned on after June 19, 2003."

In response to these questions MMI answered, "Plaintiff's expert, Jason Velasco . . . never turned on Mr. Long's laptop computer. Rather, in order to preserve the data, the hard drive was removed. MMI incorporates by reference the expert report of Jason Velasco as if fully set forth herein. Investigation is ongoing and MMI specifically reserves the right to supplement, amend and/or modify this Response."

support website that the laptop in question had been shipped to MMI on December 21, 2002, after the date Velasco surmised that the restoration activity might have taken place. Wolf criticized Velasco for failing to determine the manufacture or shipping date of the computer. Wolf also concluded that any deletions or overwrites were the result of normal processes, not efforts by a user to delete information, and that the same was true with respect to the e-mail fragments and other data found in unallocated space. Wolf opined that this "should not imply malicious activity by a user absent other evidence."

He closed by noting that the "laptop [had been] imaged by Renew Data [Velasco's firm] after at least two sessions of non-forensic access when the laptop was in the custody of MMI's lawyers."

On January 25, 2005, MMI supplemented its January 18 answers to interrogatories – this time verified – indicating that while the laptop was in possession of its counsel, a representative of MMI had in fact turned on the computer but was unable to access any files.

On January 27, pursuant to the Magistrate Judge's Order to produce documents relating to the laptop, MMI produced documents showing that it had indeed ordered the laptop in question from Dell Computer on December 17, 2003, and that Dell had issued an invoice relative to it on December 20, 2002.

On January 28, 2005, at the deposition of MMI's Rule 30(b)(6) representative, the representative admitted that in fact two MMI representatives, instead of one, had attempted to access the laptop while it was at the office of MMI's counsel.

Long thereupon demanded that MMI withdraw its claim against him relating to the laptop, which MMI refused to do. Instead, on February 11, 2005, MMI announced that it was withdrawing the Velasco report, that it would not call him at trial, and that it intended to rely solely on Long's own admission that he took the computer and the indisputable fact that the computer was retrieved from Long's counsel after Long left MMI's employ.

**II.**

Long then asked the Magistrate Judge to award him both expert and attorney's fees incurred in connection with refuting the Velasco report, arguing as follows that there was no substantial justification for the allegation in MMI's experts disclosure:

> In this case, there was no substantial justification for the allegation in Plaintiff's expert disclosure that Dale Long attempted to overwrite data on his Laptop through a backup session on or about December 10, 2002. Had MMI conducted a reasonable inquiry into the facts underlying this allegation, it would have discovered that **no alleged backup session could have taken place on or about December 10, 2002 because the Laptop was not even manufactured and shipped out of Dell Computer until December 21, 2002!** Plaintiff had documents in its possession confirming these facts, and despite request from Defendants made as early as October 2004, Plaintiff did not produce these documents until January 27th. Indeed, MMI had every opportunity to correct this purported factual finding in its expert disclosure on December 24th but chose not to do so. (Emphasis in original).

Before the Magistrate Judge MMI took the position and now before the Court contends that Long made the decision to engage a computer expert on his own in pursuit of a collateral issue, since the Second Amended Complaint alleges only that Long misappropriated the computer, not that he misapprehended information stored in it; that MMI's expert was

engaged out an abundance of caution since MMI was unsure what role the laptop would play at trial; that the Velasco report did not attempt to say who might have overwritten or deleted data; that the dates on the computer were indisputably off by 18 months, which is to say, they were unreliable; and that chain of custody issues after Long returned the computer are irrelevant because MMI seeks only to prove that Long took the computer when he left its employ.

Beyond this, MMI maintains that Federal Rule of Civil Procedure 26(g)(3), which permits the imposition of monetary sanctions under certain circumstances,[4] is inapplicable because it does not extend to their expert's report, which was not signed by an attorney. Long counters that "MMI adopted the Jason Velasco report, in full, in its responses to interrogatories signed by counsel, and MMI vouched for the credibility of the report by serving it on the Defendants to satisfy expert disclosure requirements" (Emphasis added). Long also charges that MMI intentionally concealed or withheld relevant items, including the laptop itself and the shipping documents relevant to it, and that MMI was dishonest about non-forensic access to the computer after it was sent back to MMI's counsel by Long's counsel.

---

4 Fed. R. Civ. P. 26(g)(3) states:

"If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

**III.**

The Magistrate Judge found that, by referring to and incorporating its expert's report in an answer to interrogatories, MMI caused the report to fall within the scope of Rule 26(g)(2). Thus its attorney's signature constituted a certification that, "after a reasonable inquiry," the response was "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." §26(g)(2)(B). But, according to the Magistrate Judge, "without substantial justification Plaintiff's counsel incorporated [the expert's] Report in its Answers to Interrogatories which Plaintiff's counsel signed." Thus, while the Magistrate Judge was careful to distinguish that the report itself was not subject to 26(g)(2) sanctions, he concluded that the reference to and incorporation of the report in the answers to interrogatories, signed by counsel, made the client and counsel liable for sanctions, in this case the payment of the fees of the expert Long chose to engage to refute the Velasco report.

**IV.**

On appeal from a Magistrate Judge's order in a non-dispositive proceeding, the district court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Monetary sanctions arising out of discovery disputes are non-dispositive matters within the meaning of Rule 72(a). *Phinney v. Wentworth Douglas Hospital*, 199 F.3d 1, 6 (1st Cir. 1999). The clearly erroneous standard applies to factual findings. *Id*. at 4. Legal conclusions will be rejected if "contrary to law." *See* Fed. R. Civ. P. 72(a).

**V.**

The Court finds no clear error in the Magistrate Judges's factual findings. The error in this case, if any, relates to his legal conclusion.

What, then, has he concluded?

His holding, in effect, is that a litigant and its counsel can be held responsible for errors or deficiencies in their expert's report if the litigant or counsel, proceeding carefully, should have caught and corrected them. It is true that the Magistrate Judge refers to MMI's delay in producing the invoice that would have established the shipping date of the computer Long took with him, but he does not go so far to say (as defense counsel urge in their pleadings) that MMI or its counsel were engaging in a deliberate effort to conceal or mislead. To be sure, there is a suggestion on the Magistrate Judge's part that MMI and its counsel were at the very least inattentive since, within a few days after Wolf opined that the shipment date for the laptop post-dated the possible back-up session that had given Velasco pause, MMI and its counsel (having been ordered by the Magistrate Judge to do so), produced the document that confirmed Wolf's finding. Indeed, MMI decided within some 3 weeks thereafter that it was withdrawing the Velasco report and would not be calling him at trial.

The Court agrees with MMI that the Magistrate Judge's holding is contrary to law.

First and foremost, as the Advisory Note to the 1983 Amendment to Rule 26 referring to subsection (g), establishes:

> Rule 26(g) does not require the signing attorney to certify to the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the client has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.

There is no reason why this proposition should not extend in equal measure to an expert's report incorporated by reference in an interrogatory answer. Indeed, the typical sanctions imposed in connection with expert reports because of the untimeliness or incompleteness of production have been exclusion of the reports in whole or part or, infrequently, dismissal of the case. *See, e.g., Harris v. United States*, 132 Fed. Appx. 183 (9th Cir. 2005); *Sexton v. Uniroyal Chemical Co.*, 62 Fed. Appx. 615 (6th Cir. 2003); *In re Diet Drugs Prods. Liability Litig.*, 30 Fed. Appx. 27 (3d Cir. 2002). The Court has found no case in which an attorney or even the client has been sanctioned monetarily because of deficiencies or errors – however gross they may have been – in an expert's report produced pursuant to Rule 26, whether or not referred to in answers to interrogatories.[5]

While it may be possible to imagine a scenario where such a sanction would be appropriate,[6] from a policy standpoint sanctioning a litigant or its counsel for the deficient or

---

5 The Federal Rules do provide for payment of a reasonable fee of an opposing party's expert, but do so in connection with the time the expert spends in responding to the discovery sought by the first party. Fed. R. Civ. P. 26(b)(4).

6 Certainly a client's knowing participation in the fabrication, in whole or in part, of an expert's report would qualify.

erroneous contents of an expert's report would be highly undesirable. Litigants engage the services of experts all the time, both in anticipation of and during litigation. They do so precisely because they wish to determine whether they have a case – ordinarily because the litigant (or potential litigant) lacks the expertise to make that determination on its own, as for example, the determination whether the hard drive of a computer shows evidence of tampering. Quite possibly the litigant may neglect to submit relevant information to the expert which could have a bearing on the soundness of the expert's investigation. Often the expert is looking into several issues. The omitted documents may only be pertinent to one of those issues. Additionally, information relevant to the expert's analysis may come to hand after he has commenced or concluded his report. While an astute expert may think to ask the litigant for all relevant information both before and during his analysis, he may also omit to do so. Not all experts are equally careful.

Then, too, the expert's report may turn out to be unusable. This may occur because the expert's honest conclusion does not help the litigant's case, or because it appears to be poorly reasoned, or for a host of other possible reasons. Much of the time a litigant cannot and does not decide until litigation is well under way whether or to what extent the expert will be used at trial. The expert's report may still be a work in progress until an advanced point in the litigation, at which juncture information may come to light – even information pointed out by an opposing expert – that completely undermines the expert's premises or conclusion.

Meanwhile, Rule 26(a)(2) requires disclosure of the identity of the expert together with a written report at the times and in the sequence directed by the court, but ordinarily not less than 90 days before trial. Additionally, under Rule 26(a)(4) the expert may be deposed and must, by way of answers to interrogatories, disclose his facts and opinions. Indeed, the rules of procedure presuppose that an opposing litigant will want to probe the soundness of an expert's opinion and that it will invariably do so by engaging its own expert to refute the testimony of the first expert. The system envisions specific occasions to challenge the expert's report. If totally wanting in substance, the report can be blocked pre-trial at a Daubert hearing.[7] And ultimately, at trial – the final joust – the experts will do battle in an effort to convince the trier of fact that the opinion of one is superior to that of the other. The pay-off will be a verdict that incorporates the more persuasive expert's view. Finally, it may be noted that the party that prevails in the litigation is not entitled to recover the fees of its expert as a taxable cost of the party's judgment.

The Magistrate Judge's proposed action in the present case does not give these considerations their due. Transporting the battle of experts to the pre-trial stage – holding out the possibility of a financial reward to the party with the more persuasive solon and corresponding punishment to the party with the less persuasive one – would open up an entirely newarena. Magistrate and District Judges would be confronted with challenges to the contents of expert reports as a standard tactic, not only to block various pieces of the report or the

---

7 *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

whole of it, but to recover the fees assessed by one's own expert in mounting the challenge. The multiplicity of skirmishes and expenditure of time and money that this would invite would be something to behold.

Despite MMI's contention that its non-forensic access to the laptop is irrelevant, the Court assumes that MMI may in fact have wanted its expert to determine what Long may have taken off or put on the computer while it was in his possession. It was reasonable for MMI to try to find this out. As for MMI's failure to submit to its expert documents reflecting the shipping date of the laptop, there is no indication either that they had the documents readily in hand or that MMI focused on their possible relevance to the investigation, or that the expert ever asked for them. Assuming that MMI and counsel had the documents in hand, their failure to deliver them to Velasco could have been as much the expert's fault as theirs. As indicated, the Magistrate Judge found no intentional withholding of the documents. Additionally, Long's expert had already determined that the laptop was shipped to MMI after the date Velasco suspected was the date of tampering. The documentation, whenever produced, would do no more than confirm that finding.

And, finally, when it was produced, MMI in effect surrendered. It decided its expert's conclusion was useless and determined not to call him at trial. [8]

---

[8] The parties concentrate on that part of Velasco's report in which he opined that the possible date of the restoration activity was December 10, 2002. This is what Long (and the Magistrate Judge) found had been verified without reasonable inquiry because shipping documents would have excluded that date as a possibility. But the date of the suspected restoration activity was only one feature of the Velasco report. He also opined – apart from any date – that there had been restoration activity. Although Long's expert offered a different theory regarding how the deletions and overwrites

MMI's counsel surely muddied the waters by filing unsigned answers to interrogatories indicating that no one had accessed the laptop after MMI re-took possession of it, then saying it had been accessed but only once. But within 2 weeks counsel corrected these erroneous statements; the laptop had been accessed twice by MMI representatives. This only confirmed what Wolf had already determined – that two non-forensic visits had been made to the laptop since its return to MMI. While Long sees dark dealing in all this, a more charitable view is that attorneys and their clients do not always have all relevant documents in hand at a given point in time and, even if they do, they do not always know to deliver to the expert all documents that might bear on the experts's investigation despite a *bona fide* intention to do so. At the same time, attorneys frequently draft answers to interrogatories for their clients that they not unreasonably suppose are accurate, subject to verification by their client, and the attorneys sometimes submit these draft answers to interrogatories to opposing counsel before they are verified by the client. Such actions are not picture perfect in general and they are not especially pretty in this particular case. But MMI and its counsel's actions regarding the Velasco report were not, in the Court's view, part of a nefarious plot to play unfairly in this litigation.

---

came about, it is by no means clear that Velasco abandoned his view on that point and embraced Wolf's view instead. Presumably Long would have wanted to engage an expert to prove the soundness of Velasco's conclusion regarding the alleged restoration activity, whenever the alleged restoration activity was supposed to have occurred.

MMI may have decided to give up the ghost on the entire expert report, but not necessarily because it came to believe that the entire report was valueless.

The extensive discovery clashes and vituperation that have characterized this case so far, it should be noted, give cause for concern in and of themselves. But that perhaps is best left for another sermon on another day.

For now, for the foregoing reasons, the Court SUSTAINS Plaintiff MMI's Objection to the Magistrate Judge's Order.

A separate Order implementing the decision will ISSUE.

**/s/**

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August 15, 2005